Our next case is case number 4-17-0102. In re. Marcus J. We'll show the appellants present by counsel, Ms. Varghese. Did I get it right? Oh, okay, thank you. All right, and then appellee, Mr. Zimmerman. Thank you. You may proceed. Good afternoon, your honors. May it please the court, counsel. My name is Cheryl Varghese. I'm from the Office of the State Appellate Defender, and I represent Marcus. In this case, to sustain Marcus' adjudication for residential burglary, the state had to prove that Marcus, knowingly and without authority, entered the dwelling place of another with the intent to commit a theft. To that end, the state's evidence consisted of a knocked-out window pane, Marcus' presence inside the residence, Marcus' flight from the officers, and an officer's testimony that Daniel Butz lived at 1907 East Fairchild, and that it looked like someone had been through the residence. There was, however, no evidence as to when the window pane was broken or who knocked out the window pane, no testimony from the witness who called in the burglary in progress,  as to whether he had provided Marcus with authority, no testimony from the homeowner as to how he maintained his residence, and no evidence that Marcus removed anything from the residence. The state, therefore, did not prove that Marcus entered without authority and that Marcus did so with the intent to commit a theft. Turning to my first argument, Your Honors, the state did not prove that Marcus entered the residence without authority. First, the knocked-out window pane was not evidence that Marcus entered without authority. The state did not prove who knocked out the window pane, when the window pane was knocked out, or even whether Marcus entered through the knocked-out window pane. So, counsel, is it your position that it would have been completely inappropriate for the trial court to infer from the broken window that someone entered without authorization, that your client entered without authorization, or are the things you're talking about, do they go more to the weight, you know, how you weigh it, is it credible? Your Honor, it's just that this one knocked-out window pane should not have been dispositive as to his guilt as to this element. Just because the window pane was knocked out, there was no photograph of the knocked-out window pane. We don't know if Marcus could have fit through that window. This one knocked-out window pane should not have shown whether Marcus entered without authority. Is it something the trial court could consider, though? Yes, Your Honor, the trial court could consider it. But this question also... Is this the same... This, I take it, though, is the same window that the officer says... ..whoever was in the house looked out as if they were going to come back out that window? No, Your Honor, the record did not suggest that it was the same window. It seemed that the officers were standing at different corners of the house, and so there was no evidence that Marcus could have fit through this window. In fact, this window was covered by a bush. The officer had to walk around the bush to look past the bush to notice that the window pane was knocked out. Further, even if Marcus did enter through the knocked-out window pane, that's not dispositive as to his guilt as to whether he entered without authority, because as the First District noted in People v. Larry, people do sometimes break into their own homes by breaking windows and locks. So Marcus may have had authority to enter through the knocked-out window pane. Also, Your Honor, Marcus' presence inside the residence was not evidence that he entered without authority because Mr. Butts did not testify that he did not give Marcus permission to enter the residence. In fact, the State attempted to bring in this evidence by asking Officer Howey whether Mr. Butts had given anyone permission to enter the residence. Defense Counsel objected, and the Court sustained the objection. The State made no further attempts to establish whether Marcus had authority to be inside the residence. Further, Your Honors, Marcus' flight from the residence, or flight from the officers, was not evidence that he entered without authority. Can a difference be drawn that he entered without authority based on his flight? No, Your Honor, because flight may be evidence of consciousness of guilt, but only guilt of something. The State still had to prove what he was guilty of. For instance, Marcus was placed on total home confinement the day before this alleged burglary. So his flight might have been evidence of consciousness of guilt that he had broken a probation condition one day after he was placed on total home confinement. And that might have also been why he didn't want the officers to apprehend him. The State had to provide a link between his flight from the officers and the offense that was charged, which was residential burglary.  that he had not given Marcus permission to enter the residence. In which case, his flight from the residence would have been further proof that he did not have authority to be there. But without this link, the State failed to show that his flight from the residence should be used as evidence that he did not have authority to be there. Also, Your Honors, Officer Howey's testimony that it looked like something, it looked like the residence had been gone through was not evidence that Marcus did not have authority to be there. One can have authority to be in a residence, but also move things around, even throw things on the floor. Thus, Officer Howey's testimony did not establish that Marcus did not have authority to be inside the residence. Thus, the State did not prove beyond a reasonable doubt that Marcus did not have authority to be inside the residence. Furthermore, Your Honors, the State did not prove beyond a reasonable doubt that Marcus entered the residence with the intent to commit a theft. For much of the similar reasons that I just simply stated before, the knocked-out window pane was not evidence that he intended to commit a theft because the State failed to definitively prove that he entered through that knocked-out window pane. So there was no real evidence that he unlawfully entered the residence. Also, his presence inside the residence was not enough to show that he didn't intend to commit theft because the testimony as to his activity within the residence was insufficient. Officer Howey testified that it looked like things had been gone through, but Officer Howey also conceded that he had not been in the residence prior to the date in question, so he had no real knowledge as to what Marcus moved, if Marcus moved anything. Further, once again, the flight cannot be evidence of an intent to commit theft because the State had to definitively link the flight to the offense charged, the residential burglary. Without that link, the State did not prove that Marcus committed residential burglary. However, even if this Court does find that the State did prove beyond a reasonable doubt that Marcus committed residential burglary, the State could not have done so absent the hearsay statements in this case. The first statements at issue were the Officer's statements as to the burglary in progress. A police officer may testify regarding the existence, but not the substance of the out-of-court statement for the limited purpose of explaining the steps taken in the course of the investigation. In this case, police officers could have testified that they received a dispatch call and then they went to 1907 East Fairchild. But instead, two police officers testified that they received a possible burglary in progress dispatch call to 1907 East Fairchild. Now, this hearsay was prejudicial in this case because the Court relied on it when stating its findings of fact. Specifically, the Court began its analysis with, what's one of the things that we tell juries in almost every case? Number one, that circumstantial evidence is as good evidence as any other evidence and you should consider it just as you would any other evidence. Number two, you are not required to leave your common sense outside the door. What do we have? Well, we have a call of a burglary in progress. What is it a burglary of? It's a residence, 1907 East Fairchild. And the Court ended its analysis by once again referencing that hearsay statement. The Court stated, and we have the evidence of the respondent minor fleeing from the police, having been seen inside the residence in a burglary in progress call. Then again, when the Court denied respondent's motion for a new trial, the Court stated, the fact that the owner of the property was not called at the time of the trial does not invalidate the testimony that was presented. They responded to a residence. Because the Court considered the burglary in progress call, it was prejudicial to Marcus. The next statement at issue is Officer Howie's statement that Mr. Butts lived in 1907 East Fairchild. While an officer may testify that he had a conversation with a complainant, he cannot testify as to the substance of the conversation. So Officer Howie could have testified that he talked to Mr. Butts, but he could not testify that Mr. Butts lived in 1907 East Fairchild. What if he had personal knowledge of that? I mean, I don't think his testimony was, I spoke with Mr. Butts and he told me he lives at 1907. It was more along the lines of, I spoke with Butts who lives at 1907 East Fairchild. Isn't there a difference there? I mean, we're in a small community and people know sometimes where other people live. Isn't it reasonable to conclude that the officer simply knew that he lived there? Your Honor, it would have only been reasonable if the trial counsel had actually made a hearsay objection, at which point the State could explain that he had personal knowledge and explain the foundation for that knowledge. But because counsel didn't object based on hearsay grounds, there was no, the State didn't have the ability to actually explain whether Officer Howie had knowledge of the fact that Mr. Butts lived there. Officer Howie did not testify that he had verified the information that Mr. Butts lived at 1907 East Fairchild. So trial counsel should have objected because this was the only evidence that the State presented that 1907 East Fairchild was the dwelling of another. There was no evidence other than this. And that is also why it is prejudicial to Marcus in this case because without Officer Howie's statement, he would have been acquitted of residential burglary. We do know, however, that it's not the defendant's residence or the respondent's residence. Your Honor, in the petition for adjudication, it does list Marcus's residence as a different residence. Well, also the trial judge has just put him on home confinement. Yes, Your Honor. Can the trial court take judicial notice of where he's supposed to be and where he lives? Yes, Your Honor. The trial court, with Officer Howie's statement, the State did prove that Marcus did enter the dwelling place of another. But in this case, it was Officer Howie's statement that did establish that fact. And without that statement, the State would not have been able to prove him guilty. The third issue at statement, and the final issue at statement, is Officer Howie's statement that the empty gun case was originally under a couch and the jewelry boxes were originally on the dresser. Once again, an officer may not testify to the substance of the conversation, and that is exactly what Officer Howie did. There's no evidence in the record that he could have possibly known where the jewelry boxes were originally located and where the gun case was originally located because he conceded that he had not been at that residence prior to the dating question. That testimony was prejudicial because it was the most compelling evidence as to Marcus's intent in this case. While there was other evidence that Officer Howie believed the residence had been gone through, that testimony from Officer Howie was given more credibility by this idea that items had original locations. And so by allowing that testimony to come in, it bolstered Officer Howie's testimony that he knew the residence had been gone through. Therefore, counsel's representation fell below an objective standard of reasonableness when counsel did not challenge the various hearsay statements. There was no reasonable strategy for trial counsel not making hearsay objections to this testimony because this testimony was the only evidence as to the dwelling and authority elements of the offense and the most compelling testimony as to the intent element of the offense. Absent the hearsay statements, FactFinder lacked the evidence necessary to find Marcus guilty of residential burglary. If this court has no further questions... I don't see any at this time, counsel. Thank you. We ask this court to reverse Marcus's adjudication and alternatively to remand this for a new trial. Thank you. Mr. Zimmerman? May it please the court, counsel. Good morning, your honors. My name is John Zimmerman. I'm from the 4th District Appellate Prosecutor's Office here on behalf of the state. Imagine your honors are driving home tonight and you drive past your neighbor's house and you see a window pane knocked out. What is your first thought? Oh, maybe something's going on over there. Maybe not. But you go over and you check it out. You knock on the door. No one answers. You go around to that window and you see someone running around inside. He tries to escape through another window. Then you say, hey, stop. What are you doing? And then he ends up fleeing. What is your common sense deduction of that? Clearly that even if you know your neighbor or not, there's probably something illegal that's going on. So you call the police. That's pretty much the facts of this case, your honor. Counsel argues that the state failed to prove responding guilty beyond a reasonable doubt on basically every element in this case, which the overwhelming evidence clearly contradicts that argument. The state also wants to point towards defense counsel's statements at the motion, the directed verdict motion at trial court below. The state's position is that defense counsel conceded that respondent committed to the lesser offense of criminal trespass to property, which that would make respondent's arguments on appeal regarding entering the dwelling place of another without authority forfeited, because the lesser offense of criminal trespass to property are those two elements. So basically the only argument that counsel is now left with on appeal is that there was no intent to have a theft occur once inside the dwelling. So if you lose on the concession argument as far as entering the dwelling place of another without authority, is there evidence that supported that finding? Could you repeat the question? You mentioned that your position is that defense counsel below conceded that he entered the residence of another without authority based on the representation that it was criminal trespass. Isn't that what you said? Yes. Okay. So if we disagree with you as to that point, was there evidence, putting that so-called concession aside, what evidence was presented that showed that he entered without authority? Yes, Your Honor. Well, as the trial court noted, a lot of this evidence was circumstantial evidence. Most notably, the officer testified that he spoke with the victim, the owner of the residence, who was immediately talked to after the respondent was in custody. So that, along with all the circumstantial evidence, which are hypothetical, somewhat addressed, showed that the respondent did not have the authority to be in the dwelling at all, and so therefore when he entered, he did not have any authority. Yes, counsel makes a point. There was no explicit testimony that he was not authorized to be in there, but the evidence presented at trial is overwhelming in regards to all these elements, including the without authority. I think defendant's own flight from the residence shows his consciousness of guilt, that he knows he wasn't supposed to be there. If you're in your own house and you see officers coming to your house, knocking on the door and you don't answer, and then they pull their weapons on you, I think most people's instincts at that point would be, hey, this is my house. I'm allowed to be here. Whereas here, defendant did the opposite and he attempted to run, which when officers have their weapons on you, I think that even raises the consciousness of guilt that defendant had, showing that he was in that residence without authority. Mr. Zimmerman, as a former prosecutor and a former trial judge, I can't remember a case where I would have tried to prove a residential burglary without some testimony about who was the homeowner and whether or not that person gave consent to the defendant to enter. Yes, Your Honor. It's unfortunate in this case the homeowner could not testify. I believe he was planning on testifying, but something came up at the last minute and he could not. Why does the state ask for continuance? I'm not sure, Your Honor. But the state's position is that the evidence in this case, including the circumstantial evidence, shows that he was without authority to enter the residence. Going forward, the intent to commit a theft, that was also proven by the officer's testimony that the house looked like it was rummaged through. There were jewelry boxes. But what about counsel's mention of, and it's also in the briefs, that the officer has no foundation as far as having previously seen what the residence normally looks like? Yes, that was discussed in the briefs. Although that was present in the testimony, the officer still testified that the house looked as if it was rummaged through. And the trial court's own finding, it stated, gee, maybe Mr. Butts lived that way. So he was considering, he didn't even consider that the items may have been originally located here. He was just considering based on the torn up house that maybe that's how he lived. But obviously the trial court rejected that idea because if you have jewelry cases and gun cases scattered all over your house after the police chased someone away, I think the more commonsensical conclusion is that there was a burglary of the house. Well, I think we're talking about a gun case and a jewelry box. I believe there was also... You can't be... Sorry. Were there more? I believe there was also a gun cleaning kit that was scattered all over. They're not scattered all over the house, or if they are, I don't see what the evidence of that is. They may have all been in the same room. I don't know. I mean, that's not described, is it? It's just that they're rummaged, ransacked, not where I think they're supposed to be. Yes, Your Honor, that's a more accurate statement. What if the police officer had said, Mr. Butts, show me your driver's license, and the driver's license showed that address? Would that be better? Yes, that would be better, Your Honor. What if the respondent is a rent boy, and he's going there for sexual... providing sexual favors for pay, and Butts is embarrassed about it, and the rent boy is embarrassed about it? He'd run then when the police saw him, because he's supposed to be on home confinement. We don't hear from Mr. Butts. We don't know what... Does the record show where Mr. Butts was when the entry to his home occurred? The state's recollection is that it does not, Your Honor. So we don't know if he was inside the house, outside the house, if he came home later, if a neighbor called him. We don't know any of that. That's not your fault. You're the one that has to answer for it, though, in this instance. But all that's missing from the state's case. Agreed? The state agrees to that, Your Honor. Regarding the ineffective assistance of counsel claim, the state contends that none of these statements that counsel alleges were hearsay were actually hearsay. The dispatch radio message in Bernie, a 2011 opinion from this court, Your Honor, the content of a police radio message is not hearsay if it is offered for the limited purpose of explaining the reason and manner in which the police conducted their investigation. And counsel does point that the trial court somewhat relied on that in its finding, but the state more sees that as an easier way to just explain the overall scenario of what was occurring, even if... Didn't the trial court say it was circumstantial evidence? He wasn't to leave his common sense outside the door? Yes, Your Honor. Well, if you're considering that statement, burglary in progress, as circumstantial evidence of the fact that there is a burglary, isn't there something wrong with that? That's considering it for the truth of the matter asserted. Yes, Your Honor. The state's position is that the way the trial court phrased it... Well, he put it this way, even if the trial court hadn't said that statement and it wasn't even admitted, the overwhelming evidence, he could have easily just as said the police were dispatched to this residence and then stated all the other circumstantial evidence, and that would have still made the implication circumstantially that there was a residential burglary that occurred. I think this error was ultimately harmless as well. So that is the state's position. Regarding the testimony that the victim lived at 1907 East Fairchild, the state asked the officer, Okay, did you speak to anyone after the suspect was in custody? Yes. And who was that? That would have been Daniel Butts, who lives at 1907 East Fairchild. This is clearly not hearsay. As Justice Folderwhite said, it was personal knowledge. It goes more towards the weight of the evidence and not admissibility. Similar to the locations of the items in their original locations. It was not hearsay. It did come out on cross-examination that the officer, in fact, had not previously been in the owner's home, so it points towards the inference maybe the officer was not aware of the original location, but again, that's not admissibility for hearsay purposes. It's for the weight and credibility of the officer's testimony. So as a result, none of these statements were hearsay, and the counsel's failure to object were not an effective assistance of counsel. And if they were hearsay, presumably the dispatch call, the state's position is that it was harmless error, and this was a bench trial, so the trial court was presumed to know the law and properly disregarded it, even though it did state it in its findings for reasons previously discussed. And as counsel did not go into the other issues, the state will rest if there's no further questions. I don't see any. Thank you. Thank you, Your Honors. Any rebuttal, counsel? Your Honors, what the state's hypothetical didn't address was the state's burden of proof. The state had the burden to prove the respondent guilty beyond a reasonable doubt of residential burglary, and defense counsel did not concede by making its statements after the motion for a directed verdict and during closing arguments. Defense counsel was just positing to the court that, if anything, the state may have proven him guilty of criminal trespass. But defense counsel's motion for a new trial argued the exact same issues that are argued on appeal, thus further evidence that defense counsel never intended it to be a concession, and the court never took it to be a concession. The state had a burden in this case, and the state did not meet it. Without Mr. Butts' testimony, the state could not satisfy its burden of proof. And if the state could not get Mr. Butts to court because Mr. Butts' father was very ill that week, the state could have moved to continue. But without that testimony, the state did not prove Marcus guilty beyond a reasonable doubt of residential burglary, and we ask that this court reverse Marcus's adjudication. Thank you. Thank you. We'll take this matter under advisory and be in recess at this time.